All rise. Please be seated. Next case on today's docket is the case of the people of the state of Illinois v. Ramos-Sanders. And we have Mr. Larry O'Neill. I'm looking over there for you. And I'm sorry I don't have your name. Counselor. Okay. You have a really abbreviated signature there in the shorts, but thank you. That's okay. You may proceed, Mr. O'Neill. Thank you, Your Honor. May it please the Court, Counselor. My name is Lawrence O'Neill, and I represent Ramos-Sanders in this cause. This is a direct appeal following a jury trial where Mr. Sanders was convicted of first-degree murder. Three issues are raised in this appeal. With respect to argument one, Mr. Sanders argues that the evidence was legally insufficient to support a felony murder conviction based on the predicate offense of home invasion because the state did not prove that the acts and felonious purpose underlying the murder and home invasion were separate and independent. I ask this Court to reverse Mr. Sanders' murder conviction. Mr. Sanders was charged in a one-count indictment with first-degree murder involving the shooting death of Edward Austin. Before trial, the state filed a notice that intended to submit jury instructions on multiple theories of murder, intentional, knowing, strong probability, and felony murder, and that he killed the individual while committing the forcible felony of home invasion. The state's case at trial is based primarily on a witness, occurrence witness, Terrell McCaleb, who testified that he was with Mr. Sanders, Mr. Michael Williams, Mark Jones, Scott Cole, and the decedent, Edward Austin, and several girls, and they had been partying together at a house in December of 2012. About 3 a.m., Mr. Sanders and Williams drove the girls home. Mr. McCaleb went to the house across the street that the decedent, Austin, had been remodeling, and McCaleb went to sleep. He was awakened by someone kicking the front door. McCaleb saw the decedent in the bathroom washing the blood off of his face, and he looked out the window and saw Jones's car drive away. McCaleb called Jones on his cell phone, and Jones said that he was coming back with Mr. Sanders and Williams to the house. McCaleb went out to the front porch to meet Jones, Williams, and Sanders. Williams picked up a bag of concrete that was on the front porch and threw it through the front window, and according to McCaleb, Mr. Sanders shot through the window, hitting the decedent, Mr. Austin. They all left that in the vehicle, and as they were driving away, again, this is according to McCaleb and the state's theory of the case, Williams and Mr. Sanders directed Jones to return to the house. They wanted to make sure that they had killed Mr. Austin, so they went back and dropped Williams and Mr. Sanders off at the house. Jones and McCaleb drove away. According to the state, Mr. Sanders and Williams then entered the house and finished off the decedent. That was the entry to the house, and that was the act of the murder. The jury received a general verdict instruction on first-degree murder that included intent to kill, knowing, strong probability, and felony murder. The jury was also instructed on home invasion and accountability. The jury found Mr. Sanders guilty of murder. The relevant rule of law here derives from the Illinois Supreme Court's decision in People v. Morgan, where the court held, where the acts constituting forcible felonies arise from are inherent in the act of the murder itself. Those acts cannot serve as a predicate felony for a charge of felony murder. Thus, in Illinois, in order to prove felony murder, the state must prove beyond a reasonable doubt that the defendant had a felonious purpose for the predicate felony independent of the murder. Here, the acts of the felonious purpose underlying the predicate home invasion were not severed and independent from the act and purpose of the murder. Again, the state's theory of the case was that Mr. Sanders shot through the window the first time they left. They returned to the house, went into Mr. Sanders, and went into the house and shot and killed the deceit. Thus, based on this evidence, it is apparent that the act of the home invasion, entering the house and causing injury, arose from the act of the murder itself. There was no felonious purpose for the home invasion independent of the murder. There was no evidence that supports that Mr. Sanders entered that home other than to kill the deceit. The home invasion was incidental to the murder itself, as the act of shooting formed the basis of the predicate offense of home invasion, the injury involved in the home invasion. There was no home invasion. There was only a murder. Thus, the home invasion cannot support the felony murder conviction. I ask that you reverse Mr. Sanders' conviction on this ground. Now, the state has argued, and it's a matter that needs to be addressed, that the Morgan Court also held that when there is a general verdict finding the defendant guilty, and the jury is presented with a single instruction on intentional knowing, strong probability, and felony murder, it is presumed that the jury found the defendant committed the most serious crime, which is intentional murder. However, Morgan is distinguishable from this case, and the other line of Morgan cases, because in the instant case, the jury was given an accountability instruction. An accountability instruction directs the jury's attention away from the other theories of murder, and tells the jury that the defendant need not have intended to kill. That he only committed a home invasion and a murder occurred. Moreover, Morgan, in its progeny, only raises a presumption that the jury found the defendant committed the intentional murder. Here, the presumption was rebutted, because the felony murder theory was singled out and emphasized both in the jury instructions and in the prosecutor's closing argument. As part of the accountability theory, the court instructed the jury that neither Mr. Sanders or Williams had to intend to kill the decedent in order to find him guilty of first degree murder. This instruction only pertains to the felony murder. Thus, unlike the intentional, knowing, and strong probability theories of murder, the jury was specifically instructed on what the state did not have to prove to convict Mr. Sanders of felony murder. This instruction emphasized the felony murder over the other theories of murder, effectively making the state's burden of proof on the felony murder theory lower than its burden on the other theories, thus making it more likely that the jury convicted Mr. Sanders of felony murder, and rebutting the presumption that the jury found the defendant guilty of the most serious theory of murder. In addition, the prosecutor emphasized the felony murder theory in closing argument, telling the jury that it did not need to find intent to commit murder in order to find Mr. Sanders guilty of first degree murder. It simply cannot be said that the court's instructions and the prosecutor's closing argument had no effect on the jury. Therefore, this court cannot presume that the jury convicted Mr. Sanders of intentional, knowing, or strong probability murder. Alternatively, even if we apply the presumption, if we apply the presumption that the jury found Mr. Sanders guilty of intentional murder, that would violate Mr. Sanders' due process rights based on a long line of federal and U.S. Supreme Court decisions. As argued, the felony murder theory is invalid in this case because the state failed to prove that the act and the purpose of the home invasion were separate from the act of the murder. Therefore, convicting Mr. Sanders of an offense that is invalid violates due process. It further violates due process to instruct a jury that it can convict a defendant guilty without finding them guilty on a valid theory, because doing so is equivalent to omitting a necessary element from the offense. If, beginning in Stromberg v. California in 1963, the United States Supreme Court has repeatedly stated that one of the theories that the trial court submits to the jury is invalid, that error is not cured by a general verdict. Therefore, if we apply the assumption that the general verdict in this case rested on a valid count rather than an invalid count, it contravenes the holdings of the U.S. Supreme Court. Thank you. Thank you. Thank you. We'll have the opportunity to move to Ms. Schwartz. Good morning, Your Honors. Good morning. May it please the Court, Counsel, my name is Tess Schwartz and I am a resident of the state in this matter. The defendant makes one true assertion in his brief to this Court, and that is that there is an independent felonious intent that is required in order to have a conviction of felony murder. The state wants to note that there are three issues in this case. I am going to primarily focus on the felony murder issue. If you have any questions pertaining to the other issues, please let me know. That issue is of no consequence in this case that an independent felonious intent is required for felony murder for two reasons. First, that it can be inferred that the defendant was convicted of the most serious crime of life, which was intentional murder, because he was convicted on a general verdict form. And second, in the alternative, the state did demonstrate that there was an independent felonious intent. Defendant first argues in his brief that the defendant's conviction must be overturned because he was convicted of first-degree felony murder and there was no independent felonious intent proven. However, there is a threshold of issues that the defendant seems to continuously ignore. The defendant was not convicted of first-degree felony murder. The defendant was convicted of first-degree murder on a general verdict form, which alleged four different theories under which the defendant could be found guilty. Intentional, knowing, strong probability, and felony murder predicated on home invasion. The jury was also given an accountability instruction, which I will address shortly. The evidence that was presented in the state's case, which the defendant did not mention in his argument, was not just based on Trill McHale's testimony. The state presented evidence that had DNA matching the victim's blood that was found on the defendant's shoe. There was footprints found on both the window that was broken into the house, the door that was kicked in, and the floor of the victim's house where the victim was found that was able to be identified and matched to the defendant's shoe on five points of identification. There was eyewitness testimony from Mr. Boyd, the neighbor, who saw an individual matching the defendant's description in clothing that was fleeing from the house that night. And the defendant also tested positive for gunshot residue. People need to work it. The state does agree with the defendant in this issue. It is compelling in this case. In that case, the defendant was charged with eight separate counts of first-degree murder, predicated four of them on felony murder on aggravated battery and aggravated discharge. However, in that case, the court found, and I quote, a general verdict finding the defendant guilty of murder, where the defendant was charged with intentional, unknowing, and felony murder, raises the presumption that the jury found the defendant committed the most serious crime alleged, intentional murder. And that is the same in this case, Your Honor. It mirrors the case at hand. The defendant tried to rebut this presumption by arguing that the state singled out felony murder in its closing argument. In the defendant's reply brief, he quoted the prosecutor in the case, and it says, there was clear intent in this case, but even without that intent, all we have to show is that there was a home invasion and Edward Austin ended up dead. The sentence before the state singled out the felony murder theory, the state also singled out the intentional murder theory, which is the presumption that this defendant was convicted under, which is the most serious thought. The state would also like to note that the accountability instruction given to the jury in this case, the defendant did not argue this point in his opening brief. However, he made a vast argument of it in his reply brief. The defendant argued that the holding of people being Morgan was not applicable to our case because an accountability instruction was given in this case, and it was not given in people being Morgan. The state would also like to note the defendant didn't object to the instruction given to the jury that the felony murder theory was predicated on home invasion. It was agreed upon before trial. The defendant did request further clarification as to what facts and acts the state was going to allege under the home invasion theory. Even if this court will believe that the holding from people being Morgan wasn't applicable to this case because in this case there was a single count indictment with four theories alleged under it rather than in Morgan when they were separately charged in separate indictments, the defendant still has no way of proving what theory the defendant was convicted of first degree murder under. There were four possible theories all were argued and presented at trial. The only way the defendant would be able to prove that the defendant was in fact convicted of felony murder is to go back and pull the jury, which the record does not support has occurred. The defendant is essentially asking this court to allow defendants who are convicted on a general verdict to go back and pick which theory would offer them the best opportunity and the best success on appeal. The state would argue that even in the alternative, an independent felonious intent was proven by the state in this case. The state presented evidence of a broken window that had the defendant's shoe print on it, a door that was broken into that was kicked down to the house, which had the defendant's shoe print on it. There were the defendant's shoe prints matched by the five points of identification on the floor near the victim in his blood. There was testimony by Jerome McCaleb who testified that he was with the defendant at the time that they broke into the house and threw the concrete bag through the window. This case is similar to People v. Davidson that the state mentioned in their brief. In that case, the court found the defendant guilty of felony murder predicated on a mob action. In that case, the court found that there was evidence in acts that supported the felony of mob action that was completed before the end of the aggression that eventually led to the victim's death. That mirrors the case at hand, Your Honors. In this case, the actions of the defendant of kicking the door, breaking in the window, causing harm, and intending to cause harm to the defendant did not cause the defendant's death. The five gunshots, including a gunshot to the head, is what caused the defendant's death, which was the end of the aggression which predicated the felony murder charge. The defendant tries to make similarities between the cases of People v. Pelt and the case at hand. However, it's unsupported by the case that he cites. In People v. Pelt, the court found that he could not be convicted of felony murder because the underlying felony of battery of a child was the exact same action that also supported the murder. Throwing the child on the bed, which supported the aggravated battery charge, was the exact same action which caused the murder of the child. The defendant argued the accountability in his opening argument, and the state would like to address that. As the state noted, the defense did not mention this accountability theory in the opening brief. However, it made lengthy argument in the reply brief. Even if the jury did look at the accountability instructions given at trial, it's a lesser burden that is required than it is of intentional murder, which is what is presumed that the defendant was convicted under. It doesn't require a higher burden, and even if the jury did look at this accountability theory and decided, in fact, that he was guilty of felony murder, which we do not know, they had merit to do so. They were presented with the evidence, and that's the whole purpose of felony murder, is to hold accountable people who were involved in felonies in which a murder occurs. So the state would argue that even in the case of People v. Morgan, where there wasn't an accountability instruction given, it's still applicable to the case at hand. The second issue in the defendant's brief is that the defendant's right to confrontation was violated whenever the defense was unable to question the witness, Jerome and Caleb, on how many specific years the witness might have served if he had hypothetically been charged with the same crime and convicted as the defendant in that case. In a pretrial motion, the defendant brought it to the court's attention and gave their intent that they were going to ask the witness about how many years he would have served had he been charged like the defendant. The court specifically said, and only gave the limiting instruction, that he cannot ask a specific number of years. The court allowed the defendant to ask if there would be a serious range of punishment. The court allowed the defendant to ask the witness whether there was any bias, any immunity, any plea agreements, and the defendant chose at his own volition not to question the witness on those issues. That was the defendant's own choice, and the defendant was still able to present his theory of bias through his question. That was the single limitation that was issued by the court, was you can't ask a specific number of years. It would be speculation in the court rule that it wouldn't be relevant because the defendant was not charged with anything in this case. In the second issue, the defendant also mentioned that the state mentioned the victim's generous nature briefly in a direct examination of one of the witnesses. The state argues that this brief mentioning did not cause any undue prejudice. The state asked one of the witnesses whether he had a generous nature. The defendant objected, and while the court did not rule on the objection, I'm sorry, the court overruled the objection. It gave a limiting instruction shortly after it said, that's all the further you need to go with that. You need to stop your questioning pertaining to that issue. The state also made two mentions of the victim's family to the court in front of the presence of the jury, but the defendant argues caused undue prejudice in this case. The state would argue that the brief mentioning of the family did not cause undue prejudice in this case. The defendant objected after the state questioned a witness, and the trial court didn't issue a ruling because the state withdrew its question. There's no Illinois rule that forces the trial court or requires the trial court to hear the error. Prior to the liberations, the jury was instructed by the trial court not to consider any questions sustained or withdrawn, and that was prior to the liberations as well. The third issue briefly concerning the jury instructions that were offered, the defendant claims that since an accomplished witness instruction wasn't given that there was undue prejudice and he was prevented from having a fair trial, the state would argue briefly that there was no undue prejudice cause that would directly undercut the defendant's trial strategy, which was he was never there, and Trill McHale framed him. Your Honor, for those reasons, the state would ask that you affirm the defendant's convictions. Thank you. Thank you, Ms. Schwartz. Mr. McHale, rebuttal. With respect to argument one, the state notes that there was evidence implicating Mr. Sanders in the murder, going into the house and shooting. You mentioned DNA evidence, foot impressions, and gun residue on the hand. That's true, but that does not diminish from the argument in argument one that the felonious purpose in the acts involving the home invasion were the same, arose from and were inherent in it, and were the same as the murder. So even if Your Honor's conclude that Mr. Sanders went into the house and did shoot and had those foot impressions and DNA and gun residue, that doesn't diminish from the argument that the home invasion was inherent in it and arose out of the murder. As to not objecting on the accountability theory, my argument here is a reasonably valid sufficiency of the evidence argument, which is that the evidence was illegally insufficient evidence to show that, for the felony murder based upon the predicate felony of home invasion, to show that the evidence was independent and separate from the home invasion and the murder. It's a sufficiency of the argument that the state did not prove, beyond a reasonable doubt, that the acts and the felonious purpose of the home invasion were separate and independent from the acts of the murder. So that issue is preserved here. It is true that we do not know what theory, there's a general verdict, and there's no indication of what theory to state that the jury found Mr. Sanders guilty on the four theories of murder. However, we do know that it is error and it is improper to convict for felony murder when the acts and the purpose of the felony murder are similar to and not separate from the acts of the murder. So that is an error. What we do also know is that it is a violation of due process to convict the defendant on a theory that is invalid. And if we conclude that it is invalid to sustain a felony murder based upon a home invasion when the acts and the purpose of the home invasion are the same as the acts and purpose of the murder, that's a valid theory. And that is a violation of due process if the defendant is convicted based upon that theory. And in this case, the evidence shows, the evidence shows that the acts and purpose of the home invasion were not separate and independent from the acts of the murder. Therefore, it's an invalid theory that was submitted to the jury. And again, in my comply brief, I cited several federal cases, U.S. Supreme Court cases, that say that is a violation of due process when the jury is instructed on an invalid theory. And there's an invalid theory here, and therefore, is a violation of due process. I stand on my briefs regarding the arguments two and three. And is there any more questions or comments? I don't think so. Thank you, Mr. O'Neill. Thank you, Ms. Schwartz. We'll take the matter under advisement under rulings of the Supreme Court.